IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DUSTIN HALSTEAD,<br><br>Plaintiff,<br><br>vs.<br><br>CARPET TECH, INC., a Tennessee Corporation, dba Artisent Floors<br><br>Defendant. | **8:26CV272**<br><br>**ORDER** |

This matter comes before the court on the motion to transfer venue by Defendant Carpet Tech Inc., d/b/a/ Artisent ("Artisent"). (Filing No. 39). Plaintiff Dustin Halstead ("Halstead"), a former employee of Artisent, initiated this case as a declaratory judgment action requesting that the court find the post-employment restrictive covenants he signed during his employment unenforceable. Artisent requests this action be transferred to the United States District Court for the Western District of Tennessee, as those restrictive covenants provide Halstead's consent to jurisdiction there for enforcement actions arising from the covenants.[1] The motion was referred to the undersigned by United States District Judge Robert F. Rossiter, Jr., pursuant to 28 U.S.C. § 636(b)(1) (authorizing magistrate judges to hear and determine nondispositive pretrial matters and to issue findings and

[1] Defendant initially filed a motion to dismiss Plaintiff's complaint, or alternatively to transfer this action. (Filing No. 10). As set forth in further detail below, the motion to dismiss was withdrawn and the issue of transfer was raised separately in the pending motion. (*See* Filing No. 35; Filing No. 39).

recommendations on dispositive matters).[2] For the reasons stated herein, the motion is granted.

## I. BACKGROUND

Halstead was employed by Artisent from 2018 until his resignation on April 3, 2026. (Filing No. 16 at 1-2). During his employment, Halstead signed a "Non-Compete, Customer & Employee Non-Solicitation, and Confidentiality Agreement" (Confidentiality Agreement) and a separate "Covenant Not to Compete" (Non-Compete Agreement). (Filing No. 19 at 14; Filing No. 53-1 at 1, ¶5). The Non-Compete Agreement provided as follows:

> Without limiting the remedies available to the Company, the Employee acknowledges that damages at law will be an insufficient remedy to the Company in view of the irreparable harm which will be suffered by the Company and its affiliates if the Employee violates the covenants provided in the Sections above and agrees that the Company may apply for and have injunctive relief in the State of Tennessee specifically to enforce any such covenants without providing actual damages sustained by the Company and its affiliates.

(Filing No. 16-1 at 3). The Confidentiality Agreement similarly provided:

> 8. Legal and Equitable Remedies. Employee hereby agrees and acknowledges that any breach or threatened breach of this Agreement by Employee will result in irreparable harm to the Company for which there will be no adequate remedy at law. Consequently, in the event of such breach or attempted breach, the Company shall be entitled to receive an injunction, without bond and without proof of actual damages, to prevent any further breach of this Agreement by Employee or obtain other specific performance or equitable relief necessary to enforce the Company's rights under this Agreement, to the fullest extent permissible under applicable law, in addition to all other remedies available in law or at equity.

[2] Magistrate Judges in this district have previously entered orders on motions to transfer, treating the issue as not case dispositive. *See e.g.* *Moxie Pest Control, LP v. Echo Pest Control, LLC,* 2026 WL 2797373 (D. Neb. Sept. 18, 2026); *Green Plains Trade Group LLC v. Archer Daniels Midland Company,* 2022 WL 836274 (D. Neb. Mar. 18, 2022).

> 9. General Provisions
>
> (a) Governing Law. The validity, interpretation, construction, and performance of this Agreement is governed by the laws of Tennessee. Employee hereby expressly consents to the personal jurisdiction of the state and federal courts located in Tennessee for any lawsuit filed there against Employee by the Company arising from or related to this Agreement.

(Filing No. 16-2 at 3-4; Filing No. 19-2 at 4-5).

Halstead filed a Complaint for Immediate Injunctive Relief on June 1, 2026, in the District Court for Sarpy County, Nebraska. He sought to establish his own business within the flooring industry in Nebraska. Halstead argued the Non-Compete Agreement and Confidentiality Agreement (collectively "employment agreements") signed during his employment prohibited him from establishing a flooring business and he asserted the agreements were overly broad and unenforceable. (Filing No. 1-2 at 4). Halstead preemptively sought a preliminary and permanent injunction against any attempt by Artisent to enforce the post-employment restrictive covenants and a declaration from the court that the employment agreements are "wholly unenforceable." (Filing No. 1-2 at 6). That same day, Halstead's counsel sent a letter to Artisent notifying the company of Halstead's intent to operate an independent flooring business. (Filing No. 1-3).[3] Counsel also attached a copy of the pending lawsuit to that letter. (Filing No. 1-3).

Artisent filed a Notice of Removal based upon diversity jurisdiction on June 12, 2026. (Filing No. 1). On June 18, 2026, Artisent filed a motion to dismiss which also requested, in the alternative, transfer of this action to Tennessee for full adjudication. (Filing No. 10). Artisent asserted the lawsuit was premature and not justiciable as Halstead stated he only intended to compete, but there was no live controversy between the parties

[3] It stated, in relevant part, "This letter serves as Mr. Halstead's notice of intent to operate an independent flooring business despite the unlawful restrictions found in two documents" that were "allegedly entered into as part of Mr. Halstead's employment at Artisent. It is our position that the restrictive covenants within the Agreements are wholly unenforceable. Mr. Halstead is taking the necessary legal steps to vindicate that position." (Filing No. 1-3). The letter informs counsel that "earlier today, Mr. Halstead initiated a lawsuit in the District Court of Sarpy County, Nebraska seeking injunctive and declaratory relief." (Filing No. 1-3).

at that time. (Filing No. 10). Artisent further argued that Halstead's lawsuit was a "preemptive strike" and his employment agreements contained a forum selection clause making Memphis, Tennessee the appropriate and agreed-upon forum. (Filing No. 10 at 1-2).

Halstead did not file a brief in response to the motion to dismiss. Instead, he sought leave to file an amended complaint, which was granted. (Filing No. 13; Filing No. 15). Thereafter, Halstead amended his complaint to assert a live controversy, alleging that his company, Homestead Floors, LLC, has been awarded work through competitive bidding processes, previous relationships, and Halstead's general expertise and experience. (Filing No. 16). Halstead alleged that he "has solicited and intends to continue soliciting his flooring contacts in Nebraska, including contacts with whom he worked while employed by Carpet Tech." (Filing No. 16). He again sought declaratory and injunctive relief, including that Artisent be enjoined from enforcing the restrictive covenants against him so he can compete in the flooring market and that the court declare the rights and obligations of the parties. (Filing No. 16).

On August 3, 2026, Artisent filed a document titled "Answer, Affirmative Defenses, and Verified Counterclaims for Damages, Temporary Restraining Order, and Injunctive Relief" (Filing No. 19). As to jurisdiction and venue, Artisent alleged "Artisent files it's answer and affirmative defenses subject to its still-pending motion to transfer to the United States District Court for the Western District of Tennessee." (Filing No. 19 at 1). Artisent's counterclaim asserted claims for 1) Misappropriation of Trade Secrets, under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836; 2) Misappropriation of Trade Secrets under the Nebraska Uniform Trade Secret Act, Neb. Rev. Stat. § 87-501, *et seq.*; 3) Breach of Common Law Duty of Loyalty/Confidentiality; 4) Breach of Contract – Confidentiality Covenant in Agreement; and, 5) Breach of Contract – Non-solicitation Covenants in Agreement. (Filing No. 19). Artisent's counterclaim included a request for temporary restraining order and injunctive relief. (Filing No. 19). The counterclaim alleged "Halstead told colleagues he intended to leave the flooring business soon and move home to work on

a family farm." (Filing No. 19 at 16). It further alleged that Halstead told Artisent on March 18, 2026, that he would resign effective April 3, 2026, and the company did not discern a competitive threat based upon Halstead's stated intention of retiring from the industry. (Filing No. 19 at 16). Artisent alleges it first became aware of Halstead's intention to open an independent flooring business in Omaha through the letter from Halstead's counsel dated June 1, 2026, a copy of which was attached to Artisent's Notice of Removal.

On August 7, 2026, Artisent filed a separate Motion for Temporary Restraining Order (Filing No. 20) and a Motion for Expedited Discovery. (Filing No. 22). On August 12, 2026, Artisent's motion for temporary restraining order was denied. (Filing No. 24). Judge Rossiter referred the motion for expedited discovery (Filing No. 22) and the Motion to Transfer contained within the motion to dismiss (Filing No. 10), to the undersigned magistrate judge. On August 24, 2026, Halstead filed an answer to Defendant's counterclaims and admitted that he "accurately stated to Defendant that he would be working on a family farm." (Filing No. 33 at 4). He denied the remainder of the allegations regarding his intent to leave the flooring business. (Filing No. 33 at 4).

On August 26, 2026, the undersigned held a telephone conference with counsel for the parties to discuss the pending motions. The parties reached a stipulation to resolve the motion for expedited discovery. (Filing No. 22; Filing No. 44). The court granted Defendant's oral motion to withdraw the motion to transfer and gave leave for the motion to be refiled. (Filing No. 35, Text Minute Entry). Artisent filed the renewed motion to transfer under 28 U.S.C. 1404(a) on August 28, 2026, which was again referred to the undersigned for disposition. (Filing No. 39).[4]

Artisent incorporated many of the same arguments made in its first motion to transfer in its renewed motion. (Filing No. 10; Filing No. 11 at 14-19). Specifically, Artisent argues that Halstead filed this action to forum-shop, using a premature lawsuit to deny Artisent its contractually agreed-upon forum. (Filing No. 11 at 15). It argues that if Artisent

---

[4] Artisent also renewed its motion for preliminary injunction, which was not referred. (Filing No. 57).

had been aware of Halstead's intent to compete, it would have brought an enforcement action against him in Tennessee, with Halstead's express consent to personal jurisdiction there under the employment agreements. Artisent acknowledges that it may be more convenient for Halstead to sue in Nebraska compared to Tennessee, but that Halstead's convenience argument should be set aside because of the agreements he signed with Artisent.[5] Artisent points out that Halstead had not begun competing at the time the case was filed, therefore the newly formed company had no concrete connections to this forum. (Filing No. 11 at 16-17). Ultimately, Artisent invokes both judicial economy and fairness favor transferring this matter to Tennessee. According to Artisent, Halstead "concealed his misconduct" and "filed this pre-emptive strike lawsuit before there was even a case or controversy to wrest from Artisent its choice of venue." (Filing No. 54 at 1). Artisent claims to be the natural plaintiff and that it is most convenient and equitable to litigate this case in the agreed upon forum.

Halstead responds and argues that the agreements he signed are adhesion contracts and therefore the agreements (and any forum-selection clauses therein) are unenforceable. (Filing No. 52 at 3). He argues there is no mandatory forum selection clause, therefore the convenience of the parties, witnesses, and interests of justice must determine the proper venue for this case. (Filing No. 52 at 4). He also argues that even if the agreements provided for exclusive jurisdiction in Tennessee, the court should find that the post-employment restrictive covenants are unenforceable as a matter of public policy. (Filing No. 52). Finally, Halstead argues that the relevant factors under 28 U.S.C. §1404(a) favor keeping this case in Nebraska. According to him, the alleged breach occurred in Nebraska and it is where the relevant witnesses reside and where the evidence is located. He also argues that the ability

[5] Artisent does not claim a mandatory forum selection clause exists here, but rather a permissive one. The Eighth Circuit Court of Appeals recognizes both mandatory and permissive forum selection clauses. *See Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003). "Mandatory forum-selection clauses require a case to be brought in an identified venue based on specific language indicating the parties' intent to make jurisdiction exclusive." *High Plains Const., Inc. v. Gay*, 831 F. Supp. 2d 1089, 1102 (S.D. Iowa 2011) (cleaned up). "Permissive forum-selection clauses, on the other hand, constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." *Id.* (cleaned up).

to enforce a judgment, the comparative costs of litigating in Tennessee, and the costs associated with hiring new or local counsel, weigh against transfer. (Filing No. 52).

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. §1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Section 1404(a) was designed to prevent a scenario in "which two cases involving precisely the same issues are simultaneously pending in different District Courts" because such a scenario "leads to the wastefulness of time, energy and money." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). To determine if a case "might have been brought" in the transferee district, the Court considers whether the transferee district will "(1) have subject-matter jurisdiction over the case, (2) have personal jurisdiction over the parties, and (3) be the proper venue for the transferred action." *Bhd. of Maint. of Way Employes Div./IBT v. Union Pac. R.R. Co*., 485 F. Supp. 3d 1048 (D. Neb. 2020).

"[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *In re Apple, Inc*., 602 F.3d 909, 913 (8th Cir. 2010) (quoting *Terra Int'l, Inc. v. Mississippi Chem. Corp*., 119 F.3d 688, 695 (8th Cir. 1997)). The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. *Terra Int'l, Inc*., 119 F.3d at 691. In a typical case not involving a forum-selection clause, a district court considering a §1404(a) motion should ordinarily "evaluate both the convenience of the parties [private interests] and various public-interest considerations." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. Of Texas,* 571 U.S. 49 at 62 (2013). Relevant private interests include:

> (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena

> witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, [and] (4) the location where the conduct complained of occurred....

*Terra Int'l, Inc.*, 119 F.3d at 696. Relevant public interests, or considerations "in the interests of justice," include:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*See id.* A district court is not limited to these enumerated factors in assessing a transfer motion and there is no exhaustive list of specific factors to consider. *Id.* at 691. Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964).

## III. ANALYSIS

The court has broad discretion to transfer a case under 1404(a) "to any other district…where it might have been brought" if the transferee district is more convenient for the parties and witnesses or if transfer is "in the interest of justice." *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, No. 8:17CV478, 2018 WL 6427872, at *4 (D. Neb. Dec. 6, 2018) (*citing Steen v. Murray*, 770 F.3d 698, 702 (8th Cir. 2014)). In determining that first issue, the court finds this matter could have been brought in either Nebraska or Tennessee. Halstead's complaint asserts the parties are diverse and the amount in controversy is over the threshold amount of $75,000. *See* 28 U.S.C. 1332. As Halstead is a resident of Nebraska and Artisent is a Tennessee corporation with its principal place of business in Memphis, Tennessee, Halstead could have brought this case in federal court in either Nebraska or Tennessee. *See Daimler AG v. Bauman,* 571 U.S. 117 (2014) (with respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'"); *see also* 28 U.S.C. 1391(b)(1) and (c)(2) (venue is proper in "a judicial district in which any defendant resides[,]" and a defendant

corporation "shall be deemed to reside … in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question").

In next considering the other 1404(a) factors, the court finds the convenience of the parties and witnesses is, at best, a neutral factor here. At this early stage, it is unclear which witnesses will actually need to be present to testify. Each party has identified categories of potential witnesses in its respective state of choice, and the records and documents relevant to this dispute are readily accessible to both parties in either forum. Halstead claims there are more witnesses in Omaha because Artisent's Omaha-based employees, and the customers Halstead allegedly solicited, reside or conduct business here. Artisent claims its administrative and operational personnel would have to travel to Omaha if the case is not transferred. (Filing No. 40 at 6). Artisent also argues that its critical personnel, trade secrets, and confidential information are at the company headquarters in Tennessee, which is why it bargained for and obtained Halstead's consent to litigate there. The court recognizes that merely shifting the inconvenience from one side to the other is "not a permissible justification for change of venue." See *Terra Int'l, Inc.*, 119 F.3d at 696–97 (*quoting Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)). Accordingly, the court finds that this factor weighs neither for nor against transfer.

Many of the public interest factors are similarly neutral. Neither party raises any obstacles to a fair trial in either forum. (Filing No. 40 at 7; Filing No. 52 at 12). As to the comparative costs of litigating in each forum, Halstead references the costs of appearing in person for live testimony and hearings. (Filing No. 52 at 11). Artisent's costs for counsel and personnel would be similar. (Filing No. 40 at 6). Halstead argues that he would be required to bear the additional costs of paying for new or local counsel to learn the case background in Tennessee. (Filing No. 52 at 12). It is possible that Halstead's current counsel could seek *pro hac vice* admission in Tennessee. But even if Halstead's current counsel is not willing or able to appear in the Tennessee court, the costs at this early stage of the case would likely be minimal. And while the parties disagree regarding the choice of laws analysis, the parties seemingly agree that the federal courts in either district are

both equally capable of applying federal law and the relevant state laws applicable to the claims. (*See* Filing No. 40 at 7; Filing No. 52 at 12) (*both citing Battle Sports Science, LLC v. Shock Doctor, Inc.*, 225 F.Supp.3d 824, 841–42 (D. Neb. 2016)). These factors accordingly do not weigh heavily for or against transfer.[6]

Artisent primarily focuses on principles of fairness. The court finds this factor weighs heavily in favor of transfer when considering the interests of justice. The agreements Halstead signed expressly included forum selection clauses and choice of law provisions, which clearly indicated that enforcement disputes between the parties related to those agreements should be litigated in Tennessee. (Filing No. 16-1 at 5, ¶ 17; Filing No. 16-2 at 4, ¶ 9(a)). Specifically, the language of the confidentiality agreement anticipated that lawsuits filed by Artisent against Halstead "arising from or related to" the agreement would be brought in Tennessee. Halstead also expressly consented to personal jurisdiction in Tennessee as to those disputes. (Filing No. 16-2 at 4). The language of the Non-Compete Agreement similarly provided that Artisent "may apply for and have injunctive relief in the State of Tennessee" should Halstead violate the covenants contained in the agreements. Both agreements provided that the validity, interpretation, construction, and performance of the agreements were to be governed by the laws of Tennessee. (Filing No. 16-1 at 5, ¶ 17; Filing No. 16-2 at 4, ¶ 9(a)).

It is clear that if given the choice, Artisent would have filed its enforcement action in Tennessee. It is equally clear that the language of the agreements would apply to the type of claims Artisent would have filed in Tennessee, including the counterclaims Artisent asserted in this case for breach of contract, breach of duty of loyalty/confidentiality, and misappropriation of trade secrets. *See, generally, Terra Int'l Inc.,* 119 F.3d at 692. ("Before

[6] The court has not ignored that Artisent's Renewed Motion for Preliminary Injunction remains pending and has been fully briefed, with evidence submitted by both parties. (Filing No. 57, 63, 67). But that matter too can be transferred to the equally competent federal court in the Western District of Tennessee to address in due course. *See In re Apple Inc.,* No. 2023-120, 2023 WL 2359699, at *1 (Fed. Cir. Mar. 6, 2023) (noting that district courts have discretion as to how to handle their dockets, but that disposing of a motion to transfer should take top priority over substantive proceedings). To the extent Artisent might be concerned with further delay in addressing those issues, that possibility was certainly foreseeable when it simultaneously sought to transfer this matter to another district.

a district court can even consider a forum selection clause in its transfer analysis, it must first decide whether the clause applies to the type of claims asserted in the lawsuit.").

The court acknowledges that Halstead was the first to file,[7] that the employment agreements do not mandate that Halstead's claims be filed in Tennessee, and the plaintiff's choice of forum is ordinarily to be accorded deference. *See Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir.1993) ("the first court in which jurisdiction attaches has priority to consider the case"). But there is merit to Artisent's equitable argument that Halstead filed this declaratory judgment action in Nebraska for the very purpose of preempting jurisdiction of an anticipated enforcement action in Tennessee. While the "first-filed" rule should apply in most circumstances, there are certainly exceptions. *Id*. One exception is the motivation behind the suit, including asserting an action for declaratory relief as a "race to the courthouse in an attempt to preempt the natural plaintiff from his or her choice of forum." *Schwendiman Partners, LLC v. Hurt*, 71 F. Supp. 2d 983, 987–88 (D. Neb. 1999) (*citing Northwest Airlines, Inc.*, 989 F.2d at 1007).

The Eighth Circuit has recognized a "general proposition that declaratory judgments are not to be used defensively to deny a prospective plaintiff's choice of forums." *Prudential Ins. Co. of Am. v. Doe,* 140 F.3d 785, 790 (8th Cir. 1998). And the "'true plaintiff' in a declaratory judgment action could be considered to be the party entitled to injunctive relief or damages." *BuilderTrend Sols., Inc. v. VBConversions, LLC*, No. 8:17CV195, 2017 WL 6017507, at *4 (D. Neb. Oct. 4, 2017) (*citing U.S Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 489 (8th Cir. 1990)). A short period of time between notice of intent to sue and the filings can suggest that the first-filer raced to the courthouse to usurp the natural plaintiff's forum choice. *See BuilderTrend,* 2017 WL

[7] The court recognizes that the "first-filed" rule (or its exceptions for compelling circumstances) typically applies in cases where the parties have each filed in their chosen forum, and that Artisent has not filed a lawsuit in Tennessee. Nonetheless, to require Artisent to file its enforcement action in Tennessee to trigger this analysis would be "wastefulness of time, energy, and money" in a way that 1404(a) was designed to prevent. *See Consol. Infrastructure Grp., Inc. v. USIC,* LLC, No. 8:16CV472, 2017 WL 2222917, at *8 (D. Neb. May 18, 2017). The court refers to case law regarding the "first-filed" rule only as a guide for analyzing the interest of justice factors.

6017507 at * 4 (*citing* *BASF Corp v. Symington,* 50 F.3d 555, 557-58 (8th Cir. 1995)). Additional "red flags" arise if a plaintiff: (1) files a suit in an unnatural forum; (2) lulls the opposing party into thinking he would not file a lawsuit; or (3) "secretly fil[es] the first-filed declaratory judgment action and keep[s] the lawsuit secret as a negotiating tool and method to preempt the defendant's choice of forum when it later files suit." *Hearth & Home Techs., Inc. v. J & M Distrib., Inc.,* No. 12-CV-00686 SRN/TNL, 2012 WL 5995232, at *5 (D. Minn. Nov. 30, 2012) (listing indications of bad faith which could provide compelling circumstances to deviate from the first-filed rule). Another factor to be considered is the failure of the first-filer to allege that the natural plaintiff's claims are having an adverse effect on the first filer. *See* *BuilderTrend,* 2017 WL 6017507 at *4.

In his response brief, Halstead does not substantively respond to Artisent's argument that his declaratory judgment action was filed in Nebraska as a preemptive strike. Instead, his affidavit and briefing focus only on the relative convenience of this forum. However, the court cannot ignore that several of the "red flags" noted above are present here.[8] Halstead filed a complaint for injunction and declaratory relief in Sarpy County asserting only an intent to compete, and the harms he predicted would occur if the agreements were enforced. (Filing No. 1-2 at 4). He did not allege that he had suffered any adverse effect or actual harm at that time. (Filing No.1-2 at 4) (alleging only that enforcement of the non-compete and confidentiality agreements "*will* cause Halstead substantial harm…" and further that he "*will* be hampered in his ability to establish his flooring business in the State of Nebraska.") (emphasis added). It was not until the matter was removed to this court and Halstead amended his complaint that he alleged he was actually competing. It would appear then that Halstead raced to the courthouse before any harm had occurred.

---

[8] The factual basis discussed herein is comprised of allegations from the pleadings and other evidence submitted by the parties relating to jurisdiction and venue. *See* *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-CV-00332-SRB, 2019 WL 3892873, at *1 (W.D. Mo. Aug. 19, 2019). "[W]hen reviewing a motion to transfer, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Bhd. of Maint. of Way Employes Div./IBT v. Union Pac. R.R. Co.*, 485 F. Supp. 3d at 1053 n. 1 (*citing* *Sitzer*, 2019 WL 3892873, at *1).

As to some additional "red flags," the court will not wade too deep into the merits of the parties' claims and will not rule on whether Halstead "lied" to Artisent about his intent to compete in the industry. But the record supports Artisent's argument that it was unaware of Halstead's intent to compete or was lulled into believing that an enforcement action would not be necessary. Halstead allegedly told colleagues he intended to leave the flooring business soon and move home to work on a family farm. While Halstead denies saying the first part, he admitted that he said he would be working on the family farm. (Filing No. 33 at 4). Moreover, the timing of Halstead's notice to Artisent suggests that his motivation may not have been entirely pure. It was not until Halstead filed suit that his attorney notified Artisent by letter the same day that Halstead intended to operate an independent flooring business. Notably, that same letter recognized that this would likely run afoul of the covenants contained in the employment agreements, but that Halstead believed those restrictions were unlawful. (Filing No. 1-3). It appears again that Halstead raced to the courthouse before Artisent even knew there was a race. This evidence further supports a finding that the declaratory judgment action was filed defensively in an attempt to usurp Artisent's choice of forum, i.e. to avoid having to litigate an action "against Employee by the Company arising from or related to [the Confidentiality Agreement]" in Tennessee. (*See* Filing No. 40 at 2-3 *citing* Filing No. 19 at 16; Filing No. 16-2 at 4).

Artisent did not sit around. It made immediate efforts to remove the action to federal court, to dismiss, and/or to request transfer to Tennessee. Artisent affirmatively asserted in its counterclaim that had it been notified of Halstead's intent to compete, an enforcement action would have been promptly filed in Tennessee under the employment agreements. Artisent preserved its argument for jurisdiction by promptly filing a motion to transfer, and by filing counterclaims in this lawsuit without waiving its argument that Tennessee is the proper venue. The court finds Artisent is the natural plaintiff and under ordinary circumstances it would have had the choice of forum when initiating an enforcement action under the permissive forum-selection clause. The interests of justice are served by holding the parties to their agreed-upon forum for claims related to the contracts between the

parties. For the foregoing reasons, and after balancing the case-specific factors relevant to convenience and justice, the court finds Artisent has met the burden of proving that transferring this matter to Tennessee is proper pursuant to 28 U.S.C. § 1404(a).

Accordingly, IT IS ORDERED:

1. Defendants' Motion to Transfer Venue, Filing No. 39, is granted.
2. This case shall be transferred to the United States District Court for the Western District of Tennessee.
3. If no party files an objection to this order on or before November 16, 2026, the Clerk of Court is directed to transfer this action to the United States District Court for the Western District of Tennessee. Failure to timely object may constitute a waiver of any objection to this order. *See* NECivR 72.2.

Dated this 2nd day of November, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge